**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julie Ann Decker, | No. CV-19-00195-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Julie Ann Decker brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises two issues on appeal: 1) the Administrative Law Judge ("ALJ") erred by rejecting two treating physician opinions without providing specific and legitimate reasons based on substantial evidence in the record; and 2) the ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony. (Doc. 17).

Before the Court are Plaintiff's Opening Brief, Defendant's Response, and Plaintiff's Reply. (Docs. 17, 19, & 22). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the Court finds that this matter should be remanded for an award of benefits.

## I.    Procedural History

Plaintiff filed an application for Social Security Disability Insurance and

Supplemental Security Income on January 20, 2015. (Administrative Record ("AR") 79).[1] Plaintiff alleged disability beginning on August 1, 2011 based on depression, anxiety, ADD, neuropathy, severe right ankle damage, OCD, chronic neck pain, long term memory loss, language disability, difficulty recalling words, asthma, scoliosis, chronic back pain, severe migraines, severe varicose veins, full body arthritis, gall bladder removed, damaged stomach muscles, and inability to lift due to damaged stomach muscles. (AR 79–80).[2] Plaintiff's application was denied upon initial review (AR 94) and on reconsideration (AR 123). A hearing was held on October 25, 2017 (AR 39), after which ALJ MaryAnn Lunderman found, at Step Five, that Plaintiff was not disabled because she was capable of making an adjustment to other work existing in significant numbers in the national economy. (AR 33). On January 29, 2019 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1).

Plaintiff's date last insured ("DLI") for DIB purposes is December 31, 2013. (AR 21). Thus, to be eligible for benefits, Plaintiff must prove that she was disabled during the time period of her amended AOD of October 1, 2012 and her DLI of December 31, 2013.

## II.    Factual History[3]

Plaintiff was born on November 7, 1970, making her 41 years old at the amended AOD of her disability. (AR 79). She completed some college and is a licensed esthetician, and has past relevant work as an esthetician, hostess, cocktail waitress, receptionist, and dental assistant. (AR 45, 235).

### A.    Treating Physicians

Plaintiff was treated at Carondelet in 2011–2015 for chronic right ankle pain, neck pain, lower back pain, varicose veins, leg cramps, stomach pain, severe headaches, hand pain and numbness, swelling of the hands and feet, and chronic fatigue. (AR 722–876).

---

[1] Plaintiff filed a previous application on January 16, 2008 that was denied at the initial level. (AR 80).
[2] At the hearing before the ALJ, Plaintiff amended her AOD to October 1, 2012. (AR 18, 42).
[3] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to Plaintiff's claims on appeal.

Plaintiff was treated at the University of Arizona Medical Center in 2012–2013 for bilateral hand pain, numbness and tingling in the hands and feet, headaches, abdominal pain, neck pain, chest pain, back pain, and ankle pain. (AR 281–338).

Plaintiff was treated at Tucson Medical Center in 2012 for a seizure that was likely due to stopping Xanax or alcohol withdrawal. (AR 361–375). She was seen in 2013 for pain, numbness, tingling, and burning in the left hand, and a left carpal tunnel release was performed. (AR 376–382). In 2015 she was seen for chronic leg pain and varicose veins and venous duplex testing was recommended. (AR 383–386). Venous studies showed no evidence of superficial or deep reflux, and swelling was thought to be related to trauma and multiple surgeries of the right ankle. (AR 1086). Plaintiff had a right carpal tunnel release in 2015. (AR 1223–1232).

Plaintiff was treated at Tucson Orthopaedic Institute in 2012–2015 for bilateral carpal tunnel, right ankle degenerative joint disease, right hand pain, numbness, and tingling, and shoulder pain, and received injections. (AR 682–721). Throughout 2015–2017 she was seen for left hand pain, bilateral numbness and tingling, bilateral elbow pain, right ankle pain, follow-up of right carpal tunnel release surgery, neck pain, back pain, and right lower extremity pain, and received injections. (AR 1251–1304). An electrodiagnostic study on October 4, 2016 showed mild bilateral carpal tunnel. (AR 1303–1304).

Plaintiff was treated at Alvernon Allergy & Asthma in 2012–2017 for allergies and asthma. (AR 647–672; 1305–1330).

Plaintiff was treated at Desert Sun Gastroenterology in 2014–2015 for dysphagia, nausea with vomiting, esophageal reflux, and abdominal pain. (AR 673–681).

Plaintiff was treated at Ideal Physical Therapy in 2015 for pain in the entire spine, shoulder to right elbow, and lower spine to knees. (AR 1123–1128).

Plaintiff was seen at TMC One in 2015 to establish care and reported chronic back and neck pain, back and leg numbness, pain in her legs and ankles, headaches, and fatigue. (AR 1339). Plaintiff was treated at TMC One through 2017 for high cholesterol, fatigue, back pain, ankle pain, hypothyroidism, neuropathy, and fibromyalgia. (AR 1339–1424).

Plaintiff had a spinal fusion surgery at TMC on November 16, 2016. (AR 1449–1488).

Plaintiff was seen at Tucson Interventional Pain in 2016 for evaluation of chronic moderate to severe neck pain with radiation to upper back, upper right extremity, and right shoulder, and received cervical epidural injections. (AR 1233–1250).

Plaintiff was treated at the Center for Neurosciences in 2016–2017 for neuropathy and migraines; she received Botox injections for migraines with significant relief. (AR 1425–1444).

Plaintiff was seen at Southwest Orthopedic Surgery on April 6, 2017 for a second opinion evaluation of right ankle pain. (AR 1098). She had a moderate limp and exquisite global tenderness to palpation of the right ankle, and x-rays showed advanced ankle arthritis. (AR 1099–1100). She was not a candidate for debridement and would benefit from ankle fusion for better pain control. (AR 1100). Plaintiff was seen on October 26, 2017 and wanted to defer the recommended ankle fusion; she was too young for an ankle replacement and a brace was prescribed. (AR 1539–1541).

Plaintiff was treated at the Pain Institute of Southern Arizona in 2017 for widespread pain fluctuating between 5/10 best to 10/10 worst, with 50 percent relief from taking Oxycodone three times per day. (AR 1103–1112).

Images from Radiology Ltd. showed the following: severe osteoarthritis of the tibiotalar joint, right ankle (04/05/2017); increased degenerative changes of the L-spine at L4-L5 with loss of disc height, annular bulge without canal stenosis or nerve root displacement at L5-S1, and degenerative changes at L2-3 and L3-4 without canal or foraminal compromise (03/23/2016); large left paracentral disc extrusion at L4-5 producing mild to moderate canal stenosis with probable impingement of the left L4 nerve root, mild mid lumbar dextroscoliosis with mild degenerative changes in the mid and lower lumbar spine (09/10/2015); mild degenerative changes in the mid and lower cervical spine, no disc protrusion or significant cord compression, multilevel foraminal narrowing moderate on the right at C3-4 and C4-5 and bilaterally at C5-6 (09/10/2015). (AR 1113–

1120).

On October 18, 2017 Dr. Kellogg completed a Medical Assessment of Ability to do Work Related Physical Activity form. (AR 1534). She listed Plaintiff's impairments as fibromyalgia, neuropathy, chronic low back pain with sciatica, and right ankle severe injury with severe secondary arthritis. Dr. Kellogg recommended the following limitations: occasionally and frequently lift and carry less than 10 pounds; stand and walk less than 2 hours; sit 1–2 hours; Plaintiff was medically required to use a hand-held device for ambulation; alternate sitting and standing every 30–45 minutes; never climb, balance, kneel, crouch, or crawl; occasionally stoop; right hand never perform fine manipulation or feeling, and occasionally handle and reach; left hand occasionally perform fine manipulation, frequently handle, and continuously feel and reach; and environmental limitations for heights, moving machinery, and temperature extremes. (AR 1534–1536). Dr. Kellogg also completed a Pain Functional Capacity Questionnaire and opined that Plaintiff had severe pain (defined as extremely impaired due to pain which precludes ability to function), that her pain would constantly interfere with attention and concentration, and that Plaintiff had constant deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. (AR 1537–1538). Dr. Kellogg indicated that the limitations existed on or before December 31, 2013. (AR 1536, 1538).

Plaintiff has received mental health services at La Frontera since 2008 (AR 1331), and the record contains progress notes from her appointments in 2011–2018 (*see* Exs. 9F, 15F, 20F, and 26F). In 2008, Plaintiff's diagnoses were major depressive disorder, prolonged PTSD, social phobia, acute stress disorder, and generalized anxiety disorder. (AR 975). These diagnoses are documented throughout the treatment notes in 2011–2013. At a clinical assessment on August 29, 2017, Plaintiff's diagnoses were major depressive disorder, recurrent, moderate; ADHD, predominately inattentive type; and panic disorder [episodic paroxysmal anxiety] without agoraphobia. (AR 1133). Plaintiff reported daily symptoms of OCD, depression, anxiety, and ADD, daily passive thoughts of suicide, and a suicide plan for after her mother passed away. (AR 1133, 1136). Plaintiff was friendly

with good eye contact and coherent speech, mood was anxious, impulse control and self-concept poor, concentration, judgment, and insight were fair, recent and remote memory not intact, and thought process loose associations, rambling, relevant, and tangential. (AR 1137).

Plaintiff began seeing Dr. Diez de Pinos on April 14, 2017 and reported problems with her ADHD and problems sleeping due to pain. (AR 1155–1156). Plaintiff was pleasant and cooperative, was using a cane, mood was stressed, affect mildly anxious to euthymic, short and long-term memory were grossly intact, and insight, judgment, and impulse control were fair to good (AR 1156–1157). Dr. Diez de Pinos noted Plaintiff's mood and anxiety were partially improved and that they would look into options for augmenting her attention and focus. (AR 1156). On July 13, 2017 Plaintiff reported she was feeling crappy, Prozac did not work for her, and she had passive thoughts of death with no active desire or plan to harm herself. (AR 1149). Her mood was mildly dysphoric and anxious and congruent with content, short and long-term memory were grossly intact, and insight, judgment, and impulse control were fair to good. (AR 1150). Dr. Diez de Pinos noted Plaintiff's mood and anxiety were partially improved but that fluoxetine was clearly insufficient to her needs and she had problems with attention and focus. On August 25, 2017 Plaintiff was documented to have normal rate and volume of speech, mood frustrated but ok, affect mildly anxious to euthymic, thought linear with no suicidal ideation, short and long-term memory intact, and insight, judgment, and impulse control fair to good. (AR 1142). On October 17, 2017 Plaintiff had significant improvement on Citalopram compared to Prozac, but continued to have frequent, although lessened, thoughts of suicide. (AR 1489). Her mood was anxious, frustrated, and depressed but better, affect mildly anxious to euthymic, short and long-term memory intact, and insight, judgment, and impulse control fair to good. (AR 1490). Dr. Diez de Pinos noted that Plaintiff's symptoms were partially improved but exacerbated by acute on top of chronic pain, and that he would continue to fine tune her medications.

On October 25, 2017, Dr. Diez de Pinos completed a Medical Assessment of

Plaintiff's Ability to Perform Work Related Activity form. (AR 1445). Dr. Diez de Pinos noted that Plaintiff's Axis I diagnoses were major depression recurrent, generalized anxiety disorder, ADHD, and panic disorder. He opined that she had mild limitations in understanding and remembering simple instructions, carrying out simple instructions, interacting appropriately with the general public, and asking simple questions or requesting assistance; moderate limitations in getting along with co-workers and peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness, responding appropriately to changes in the work place, and traveling to unfamiliar places or using public transportation; moderately severe limitations in remembering locations and work-like procedures, sustaining an ordinary routine without supervision, making simple work-related decisions, accepting instructions and responding appropriately to criticism from supervisors, and setting realistic goals or making plans independently from others; and severe limitations in understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration without interruption from psychologically-based symptoms, performing activities within a regular schedule, maintaining regular attendance, and being punctual, working in coordination with or proximity to others without being distracted by them, and completing a normal work day and work week without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (AR 1445–1447). Dr. Diez de Pinos further opined that Plaintiff would likely be absent from work more than 3 days per month due to her symptoms, that her limitations had lasted or would last 12 months or longer, and that her limitations had existed on or before her DLI. (AR 1448). Dr. Diez de Pinos commented that Plaintiff's severe depression, anxiety, and problems with focus, attention, and distractibility were only partially relieved with medication despite full compliance, and that when considering her chronic and acute pain together with her psychiatric issues, it was clear to him that Plaintiff had a chronic and enduring disability and was unable to return to any meaningful employment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        B.      Plaintiff's Testimony

        On a disability reported dated February 26, 2015 Plaintiff reported that she had struggled with anxiety and depression her entire life and wasn't diagnosed with ADD until she was an adult. (AR 246). She feels overwhelmed and like she will never get anything done, and every day she wakes up in pain from head to toe. Her father died a few years ago and her stepmother committed suicide, and Plaintiff has suicidal thoughts. The interviewer noted that Plaintiff was having issues breathing, her concentration was poor, and the interview was very long because Plaintiff had a hard time remembering what was asked and was clearly experiencing anxiety over not being able to remember exact information. (AR 249).

        In a letter dated September 1, 2015 requesting reconsideration of the denial of her application, Plaintiff stated that she had had more doctor appointments including right hand carpal tunnel release surgery and cortisone shots in her right ankle, and had MRIs scheduled for worsening and constant neck and back pain. (AR 147). She also alleged that her hands were numb, that she could not walk at all without unlivable unbearable pain, and that she woke up every day exhausted, depressed, forgetful, and in more pain than when she went to bed. (AR 147–148).

        At the hearing before the ALJ, Plaintiff testified that she was unable to work because she is unable to function as far as getting up on time, getting ready, or making even simple decisions like what to wear. (AR 45). She has no concept of time and is always late and has been fired from almost every job for tardiness. She has ADD which prevents her from focusing even with medication. (AR 45–46). She also has physical pain and depression and some days cannot even get out of bed. (AR 46). Plaintiff last worked at Spa One in 2011 and left when the business closed. (AR 46–47). She was often late to work and had difficulty finishing work on time, and called in sick often. (AR 47). Before that she worked at American Laser Centers and was fired for being late and calling in sick too often.

        Plaintiff lives with her mom and her only income is food stamps. (AR 44). She does not drive because her license is suspended. Her medications make her tired, drowsy, and

groggy, like she is only half awake and can't focus. (AR 50).

Plaintiff testified that she could lift 20 pounds, sit for 30–40 minutes, stand for 15–20 minutes, cannot walk at all without her cane, and has trouble walking through the grocery store because within 20 minutes it is painful and exhausting. (AR 51). She has back pain from sitting, pain in her back and ankle from standing and walking, and has no balance and cannot squat. (AR 53). Plaintiff uses a cane and a cart at the grocery store. She had two bad car accidents about 22 years ago and broke her leg and ankle, and has since had at least 4 surgeries on her ankle. (AR 54). An ankle fusion surgery was recommended and Plaintiff did not want to do it because it was a horrible surgery, but stated that she had no choice. (AR 56–57). Plaintiff had a fusion surgery on her back and reported some relief but it did not completely take her pain away. (AR 61–62). Her pain can be burning, sharp, or a constant ache, and is made worse by bending over, sweeping, vacuuming, mopping, reaching for things, siting, and standing. (AR 62–63). Lying down with her feet up to reduce ankle swelling helps. (AR 63). Her ankle swells two to three times a day and she will elevate her feet for 20 minutes with an ice pack. (AR 64). She also naps for about an hour a day to rest and relieve back pain. Plaintiff also has migraines but has had huge improvement from Botox injections. (AR 65).

Plaintiff has anxiety and cannot go anywhere alone; she has had depression since she was a teenager and doesn't want to live; she doesn't want to be here and doesn't think life should be this difficult; and her physical pain makes her depression worse. (AR 58–60).

Plaintiff spends most of her time sleeping during the day and has trouble sleeping at night. (AR 51). She feeds her dog and the hummingbirds, does not have any hobbies, does not go out with friends, and last traveled to see her sister a year and a half before the hearing. (AR 52).

C.    Vocational Testimony

At the hearing before the ALJ, Mary Jesko testified as a vocational expert. (AR 65). She classified Plaintiff's past work as an esthetician, hostess, and dental assistant as light

and skilled; cocktail waitress as light; and front office receptionist as sedentary. (AR 69).

The ALJ asked Jesko to assume an individual who could perform light work with the following limitations: frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally crawl, stoop, and bend at the waist; frequently kneel, crouch, and bend at the knees; handling and fingering with the left arm limited to frequently; less than occasional exposure to fumes, odors, dust, gases, poor ventilation, and hazards; and contact with supervisors, coworkers, and the public is limited to occasional and brief, intermittent contacts. (AR 69–70). Jesko testified that such a person could not perform any of Plaintiff's past jobs, but could do other jobs at the light level such as mail clerk, marker, and small parts assembler. (AR 70).

For the second hypothetical, the ALJ reduced the exertional level to sedentary. (AR 70). Jesko testified that such a person could not perform any of Plaintiff's past work but could do other jobs such as lens inserter, final assembler, and sporting goods assembler.

For the third hypothetical, Plaintiff's attorney asked Jesko to assume an individual who was severely limited (defined as precluding the ability to perform work functions 21 percent or more of an 8-hour workday) in the following areas: ability to maintain attention and concentration without interruptions from psychologically-based symptoms; perform activities within a schedule; maintain regular attendance; work in coordination or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms; and to perform at a consistent pace without an unreasonable number of rest periods. (AR 71). Jesko testified that such an individual could not sustain Plaintiff's past work or any other work in the national economy. (AR 72). If a person were absent from work more than 3 times per month, that would preclude job sustainability in Plaintiff's past work and other work.

For the fourth hypothetical, Plaintiff's attorney asked Jesko to assume an individual with the following limitations: occasionally and frequently lift/carry less than 10 pounds; stand/walk for less than 2 hours; sit for less than 6 hours; right hand occasionally handle and reach, and never perform fine manipulation or feeling; and left hand occasionally

perform fine manipulation, frequently handle, and constantly feel and reach. (AR 72–73). Jesko did not directly answer the question, but testified that the maximum amount of time an employer would tolerate someone being off-task during the workday outside of normal breaks was 10 percent, whether that was to use the restroom, leave the workstation, or sit in the car, etc. (AR 73–75).

D.    ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of osteoarthritis of the right ankle, status post multiple remote surgeries; mild bilateral carpal tunnel syndrome, status post bilateral carpal tunnel release surgeries; lumbar degenerative disc disease, status post interbody fusion at L4-5; other arthralgias and myalgias variously diagnosed to include degenerative changes in the cervical spine, myofascial pain, and fibromyalgia; and mental disorders variously diagnosed to include major depressive, posttraumatic stress, social phobia, ADHD, and panic disorder without agoraphobia. (AR 21).

The ALJ also considered the Paragraph B criteria set out in the social security disability regulations for evaluating mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The ALJ found Plaintiff had mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; mild limitation in concentration, persistence, or pace; and mild limitation in adapting or managing oneself. (AR 23). Because the ALJ did not find "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning, the Paragraph B criteria were not satisfied. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.

The ALJ found that Plaintiff's asthma, headaches/migraines, GERD, allergic rhinitis, hypothyroidism, and history of cholecystectomy and hernia repair were non-severe because they caused no more than minimal limitation in the ability to perform basic work activities. (AR 21).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record for the reasons explained in the decision. (AR 25, 26).

The ALJ gave little weight to Dr. Kellogg's opinion because although she was an acceptable medical source and had an intermittent treating relationship with Plaintiff, the opinion was not consistent with the evidence as a whole or with Dr. Kellogg's own contemporaneous treatment records. (AR 29).

The ALJ gave little weight to Dr. Cicarell's opinion because although he was an acceptable medical source and had a treating relationship with Plaintiff for a portion of the period at issue, he did not support or explain his opinion that Plaintiff was unable to gain employment or provide evidence as to why she could not perform other work. (AR 29).

The ALJ gave some weight to Dr. Diez de Pinos's opinion because although he was an acceptable medical source and had a treating relationship with Plaintiff, his opinion was not entirely consistent with contemporaneous treatment notes, including his own. (AR 30). The ALJ further gave little weight to Dr. Diez de Pinos's opinion that Plaintiff was disabled because he did not explain or justify the opinion in terms of the requirements for disability under the regulations, and he did not provide evidence establishing why Plaintiff was unable to perform other work.

The ALJ also gave some weight to the state agency physician opinions at the initial and reconsideration levels because while their opinions were generally consistent with the findings, the ALJ gave greater weight to the evidence as a whole, including evidence submitted at the hearing level. (AR 30).

The ALJ found that Plaintiff had the RFC to perform light work with the following limitations: frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, crawl, kneel, and crouch; frequently use upper left extremity to handle and finger; seldom to rare exposure to workplace hazards and fumes, dust, gases, and poor ventilation; and work tasks must require no more than occasional brief intermittent contact with supervisors, coworkers, and the public. (AR 24). The ALJ found that Plaintiff was unable to perform her past work, but that she could perform other work existing in significant numbers in the national economy such as mail clerk, marker, small parts assembler, lens inserter, final assembler, or sporting goods assembler. (AR 31–33). The

ALJ therefore concluded Plaintiff was not disabled. (AR 33).

## III.    Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes her from performing her past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility,

and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

### IV.    Discussion

Plaintiff argues that the ALJ erred by improperly rejecting the treating physician opinions of Dr. Diez de Pinos and Dr. Kellogg. Plaintiff contends that based on testimony by the VE, if the treating physician opinions were properly credited, Plaintiff would be precluded from all work. Plaintiff further argues that the ALJ erred by improperly rejecting her subjective symptom testimony and states that her symptoms of needing to elevate her legs throughout the day and rest for an hour or more to relieve pain and fatigue are

1    inconsistent with an ability to work. Plaintiff contends that the ALJ's errors were materially

2    harmful and requests that this case be remanded for an award of benefits.

3        The Commissioner argues that the ALJ provided legally sufficient reasons to

4    discount the treating physician opinions by noting inconsistencies with the treatment notes

5    and the state agency physician opinions, and that the ALJ was therefore not required to

6    include the limitations assessed by Drs. Diez de Pinos and Kellogg in the RFC or the

7    hypotheticals posed to the VE. The Commissioner further argues that the record does not

8    support Plaintiff's alleged need to use a cane and that her impairments improved with

9    treatment.

10        The Court finds that the ALJ failed to provide legally sufficient reasons to reject Dr.

11   Diez de Pinos's treating physician opinion. This error impacted the ALJ's RFC assessment

12   and the hypotheticals posed to the VE. Consequently, the error was not harmless because

13   it ultimately impacted the ALJ's Step Five nondisability finding. The undersigned further

14   finds that, applying the credit as true rule, remand for an award of benefits is appropriate.[4]

15       A. Law

16        In weighing medical source opinions in Social Security cases, the Ninth Circuit

17   distinguishes among three types of physicians: (1) treating physicians, who actually treat

18   the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3)

19   non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*,

20   81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the

21   opinion of a treating source than to the opinion of doctors who do not treat the claimant."

22   *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 830).

23   "Courts afford the medical opinions of treating physicians superior weight because these

24   physicians are in a better position to know plaintiffs as individuals, and because the

25   continuity of their treatment improves their ability to understand and assess an individual's

26   medical concerns." *Potter v. Colvin*, 2015 WL 1966715, at *13 (N.D. Cal. Apr. 29, 2015).

27

28       [4] Because the Court finds that remand for an award of benefits is warranted based
     on the ALJ's error in discounting Dr. Diez de Pinos's opinion, the Court declines to address
     the other issues raised by Plaintiff in her appeal.

"While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012.

Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012 (internal quotations and citations omitted). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's ADL. *Tommassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* However, "when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Finally, if the ALJ determines that the plaintiff's subjective complaints are not credible, this is a sufficient reason for discounting a physician's opinion that is based on those subjective complaints. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

B.  Analysis

Plaintiff argues that the ALJ erred by failing to provide specific and legitimate reasons to discount Dr. Diez de Pinos's treating physician opinion. The Court agrees.

The ALJ first stated that she gave "some weight" to Dr. Diez de Pinos's opinion because although he was an acceptable medical source and had a treating relationship with Plaintiff, "his opinion is not entirely consistent with contemporaneous treatment notes, including his own." (AR 30). As an initial matter, the Court notes that the ALJ did not specify which portion(s) of the opinion she disagreed with, but the RFC largely fails to incorporate any of the limitations Dr. Diez de Pinos assessed. The only non-exertional limitation the ALJ included in the RFC was a limitation to occasional and brief intermittent contact with supervisors, coworkers, and the public. (AR 70). Further, the ALJ failed to cite to any specific record that contradicted Dr. Diez de Pinos's opinion, and the Court cannot meaningfully review the ALJ's reasoning with such a broad statement. While the Commissioner is not required to "discuss *all* evidence[,]" the Commissioner is required to "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently" and "must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (emphasis in original) (internal quotations and citation omitted).

Second, the ALJ specifically noted that when Dr. Diez de Pinos saw Plaintiff in October 2017, he documented that she had frustrated, anxious, and depressed mood and mildly anxious to euthymic affect, but also documented linear thought content, grossly intact short and long-term memory, average fund of knowledge, and fair to good insight, judgment, and impulse control. The ALJ further noted that Dr. Diez de Pinos documented "vague episodic suicidal ideation" and that Plaintiff had a recent stressor where her sister needed emergency surgery, but also documented improvement in Plaintiff's symptoms with medication and stated that he would adjust and fine tune her medications. The Court finds that this is not a legally sufficient reason to discount the opinion. The ALJ fails to explain how these observations contradict Dr. Diez de Pinos's opinion, and nowhere did he opine that Plaintiff's condition had improved or stabilized to the point where she would be able to function appropriately in a workplace. Notably, the ALJ did not highlight Dr. Diez de Pinos's comment that Plaintiff's severe depression, anxiety, and problems with

focus, attention, and distractibility were only partially relieved with medication despite full compliance, and that when considering her chronic and acute pain together with her psychiatric issues, it was clear to him that Plaintiff had a chronic and enduring disability and was unable to return to any meaningful employment.

Further, the record reflects that while at times Plaintiff reported improvements in her conditions and functioning, she also consistently reported problems with depression, anxiety, trouble concentrating, poor sleep, and thoughts of suicide. The ALJ cited to Exhibit 26F, which spans 45 pages, but only referenced two pages of notes documenting Plaintiff's mood and behavior from the October 2017 appointment. The entire record contains approximately 350 pages of notes documenting Plaintiff's mental health treatment at La Frontera from 2011 through 2017. While "[a] conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider," *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014), the ALJ may not manufacture a conflict by cherry-picking the evidence to support a finding of non-disability. *See Garrison*, 759 F.3d at 1014 (ALJ manufactured a conflict by identifying a few reports of improvement and then asserting, without reference to any other treatment records, that provider's opinion merited little weight). Further, "[i]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment" and "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017. "That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Garrison*, 759 F.3d at 1017 ("improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace"); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (the fact that a claimant is "responding to treatment . . . does not provide a clear and convincing reason for

disregarding" her testimony because "[n]o physician opined that any improvement would allow [her] to return to work"). Taken as a whole, the medical records illustrate Plaintiff's long-term struggle with mental health issues and document that she continued to struggle with the symptoms of her depression, anxiety, ADHD, and PTSD despite receiving medication and therapy.

Lastly, the ALJ stated that "[a]s for [Dr. Diez de Pinos's] opinion concerning the claimant's disability and capacity for meaningful employment, I give it little weight [because h]e did not justify or explain his opinion in terms of the requirements for disability under the provisions of the Social Security Act and he did not provide vocational evidence or analysis establishing why the claimant is unable to perform other work." The Court finds that this is not a legally sufficient reason to discount Dr. Diez de Pinos's opinion. There is no requirement that a treating physician explain his or her opinion in terms of the requirements for disability under the Act—indeed, the decision whether an individual meets the statutory requirements for disability is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *see also Montijo v. Sec'y of Health & Human Servs.*, 729 F.2d 599, 601 (9th Cir. 1984) (ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability . . . but he cannot reject them without presenting clear and convincing reasons for doing so"). Nor is there any requirement to provide vocational analysis explaining why a claimant is unable to perform other work. Dr. Diez de Pinos assessed Plaintiff's limitations and explained that despite full compliance with her medications, Plaintiff experienced only partial relief of her mental health conditions, and that when considering her chronic and acute pain together with her psychiatric issues, it was clear to him that Plaintiff was unable to return to any meaningful employment.

In sum, the Court finds that the ALJ erred by failing to set forth clear and convincing or specific and legitimate reasons supported by substantial evidence to assign reduced weight to Dr. Diez de Pinos's opinion. Further, the ALJ failed to address the factors set out in 20 C.F.R. § 404.1527(c) for evaluating medical opinions, particularly the frequency of

examination and the length, nature, and extent of the treatment relationship, and the evidence in support of Dr. Diez de Pinos's opinion. This error is not harmless because it affected the ALJ's RFC assessment and the ultimate nondisability finding at Step Five, and it is clear that by crediting Dr. Diez de Pinos's opinion Plaintiff would not have the RFC to perform any work existing in the national economy.[5] *See Marsh v. Colvin*, 792 F.3d 1170, 1172–74 (9th Cir. 2015) ("a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). Accordingly, the Court finds that this matter should be remanded for an award of benefits.

## V.    Remedy

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (quoting *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). "Remand

---

[5] The only non-exertional limitation in the ALJ's RFC was a limitation to occasional and brief intermittent contacts with supervisors, coworkers, and the public. On questioning by Plaintiff's attorney, using the limitations assessed by Dr. Diez de Pinos, the VE testified that if someone had severe limitations in the ability to maintain attention and concentration without interruptions from psychologically-based symptoms, perform activities within a schedule, maintain regular attendance, work in coordination or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number of rest periods, such an individual could not sustain Plaintiff's past work or any other work in the national economy. (AR 71–72). The VE further testified that if a person were absent from work more than 3 times per month, that would preclude job sustainability in Plaintiff's past work and other work.

Thus, when crediting Dr. Diez de Pinos's opinion and the VE's testimony regarding severe limitations in sustained concentration and persistence, it is clear that Plaintiff does not have the RFC to perform any work existing in significant numbers in the national economy. *See Garrison*, 759 F.3d at 1021 n.28. Accordingly, the undersigned finds that remand for an award of benefits is appropriate.

for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke*, 379 F.3d at 593 (citations omitted). Where the test is met, "we will not remand solely to allow the ALJ to make specific findings . . . Rather, we take the relevant testimony to be established as true and remand for an award of benefits." *Id.* (citations omitted); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995).

As discussed above, the undersigned finds that the ALJ erred in failing to provide legally sufficient reasons for discounting Dr. Diez de Pinos's opinion. The undersigned further finds that remand for an award of benefits is appropriate because Dr. Diez de Pinos's opinion regarding non-exertional limitations which would render Plaintiff disabled under the Act establishes that there are no outstanding issues that must be resolved before a determination of Plaintiff's disability can be made because it is clear from the testimony of the VE that the ALJ would be required to find Plaintiff disabled were such evidence credited.

Furthermore, it has been over five years since Plaintiff applied for benefits. While this is not a reason to remand for an award of benefits, the Ninth Circuit has recognized that "[r]emanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" *Benecke*, 379 F.3d at 595 (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398 (9th Cir. 1988)). Thus, because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Diez de Pinos's opinion, and because all three factors favoring remand for an award of benefits are satisfied, remanding for further administrative proceedings "would serve no useful purpose and would

unnecessarily extend [Plaintiff's] long wait for benefits." *Benecke*, 379 F.3d at 595; *see also Regennitter v. Commissioner*, 166 F.3d 1294, 1300 (9th Cir. 1999) (where the court "conclude[s] that . . . a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, we may order the payment of benefits.").

## VI.   Conclusion

In light of the foregoing, **IT IS HEREBY ORDERED** reversing the Commissioner's decision and remanding this matter for an award of benefits. The Clerk shall enter judgment accordingly and close its file on this matter.

Dated this 15th day of May, 2020.

Eric J. Markovich
United States Magistrate Judge